ELMER J. BRUBAKER, Respondent, v. BRUCE S. BIDSTRUP, Appellant.

Kansas City Court of Appeals, May 13, 1912.

1. ASSAULT AND BATTERY: Self-Defense. In an action for assault and battery the defendant is entitled to have the issue of self-defense submitted to the jury, if it be raised by the answer and the evidence of plaintiff will support a reasonable conclusion that the injury was inflicted in necessary self-defense, notwithstanding it may be without support in the evidence of defendant.

2. ———: ———. If a person has reasonable cause to apprehend immediate danger of death, or great personal injury, he has a right to use such force as appears to him to be reasonably necessary to protect himself against such impending danger.

Appeal from Cooper Circuit Court.—*Hon. John M. Williams,* Judge.

REVERSED AND REMANDED.

*J. A. Corum* and *Williams & Williams* for appellant.

The court erred in refusing to submit the defendant's right of self-defense to the jury. Even if plaintiff's testimony was believed by the jury they would have been warranted in finding for the defendant on

the ground of self-defense if the instruction had permitted them to do so. The law requires juries to find the facts by weighing all the testimony from whatsoever source it may come. It is not illogical for one to say to his adversary that "upon your testimony you are not entitled to recover of me." A defendant is entitled to have instructions based on the testimony of his own witnesses or his adversary's witnesses or the testimony of his adversary even though such testimony be at variance with his own. State v. Bidstrup, 140 S. W. 904; Hill v. Railroad, 158 Mass. 458; Knorp v. Wagner, 195 Mo. 637; 1 Ency. of Evidence, 486.

*W. F. Johnston, W. V. Draffen* and *John Cosgrove* for respondent.

We submit that if there was any self-defense in the case it was properly submitted to the jury, and consequently the court committed no error in refusing the instructions asked by the defendant. The evidence did not call for such an instruction. State v. King, 203 Mo. 570; Higgins v. Minaghan, 78 Wis. 602, 123 Am. St. Rep. 428.

JOHNSON, J.—This is an action to recover compensatory and exemplary damages for an assault alleged to have been committed on plaintiff by defendant in the night of November 13, 1909. The answer is a general denial and a plea of self-defense. The cause was submitted to the jury on instructions that authorized the assessment of exemplary as well as compensatory damages. The verdict was for plaintiff in the sum of six thousand five hundred dollars compensatory damages. After his motion for a new trial was overruled defendant brought the case here by appeal. A criminal prosecution for the assault ended in a conviction of defendant but on appeal to the Supreme Court the judgment was reversed and the cause remanded on the ground that the court erred in not sub-

mitting to the jury the issue of self-defense. The facts stated by KENNISH, J., in the opinion (237 Mo. 279) substantially are the same as those in the present record with one exception which later we shall notice.

The parties are young farmers, are related by marriage and for some time had been at enmity. They lived in Cooper county on adjoining farms, their homes being less than half a mile apart. Plaintiff's home was at the southwest corner of a tract of woodland and pasture containing twenty acres. A public road on the west side of this tract turned at the northwest corner of the tract and continued east to the farm of defendant and thence ran north. Defendant's house was sixty-five yards east of his west line and about that distance northeast of the northeast corner of plaintiff's farm. Plaintiff's story of the events that culminated in his injury is so strange that it is almost unbelievable, but we have reached the conclusion entertained by the Supreme Court that we should not pronounce it wholly incredible but should hold that it is substantial enough to present issues of fact for the jury to solve.

The substance of the narrative thus may be stated: At about seven o'clock in the evening plaintiff, hatless and coatless and, of course, unarmed, went to his barn and returning, noticed a person whom he supposed was a neighbor on some friendly errand go around the house towards the kitchen door. Plaintiff followed and when he reached that side of the house, discovered that the person, instead of going to the door had turned off towards the twenty-acre tract. It was too dark for plaintiff to see the person but he heard retreating sounds and called, thinking perhaps the person was on his way to a "possum" hunt arranged by neighbors for that evening. Receiving no reply, plaintiff set out in pursuit and then thinking the trespasser was his enemy (the defendant), strove to overtake him. The pursuit developed into a chase

maintained by both parties at top speed. The course of the pursued was northward across the woodland and pasture to the public road on the north of the farm. Plaintiff seemed to be the swifter runner and chose a course that placed him between his retreating enemy —who afterward proved to be the defendant—and the latter's home. A barbed wire fence which separated the farm from the public road arrested the flight of defendant and brought him to bay. He stopped and plaintiff being unable to see or hear him, groped around to find him. Suddenly defendant, who carried a loaded shotgun, fired and the charge entered the calf of plaintiff's right leg. Defendant then called on plaintiff to stop and almost immediately fired a second time. This shot entered the same leg of plaintiff on the opposite side of the calf. Plaintiff who was not disabled continued to advance and hearing defendant climbing the wire fence climbed over after him into the public road and there engaged in a struggle with him. At first defendant clubbed his gun and tried to strike plaintiff but the latter closed in before the blow could be delivered and grappling with his adversary, they fell to the ground, plaintiff on top. Defendant succeeded in drawing and opening his pocket knife and slashed plaintiff across the face. Plaintiff weakened by his wounds was unable to continue the combat and defendant tore away from him and ran east in the road to his home, leaving his gun on the field of battle. The cries of plaintiff attracted his neighbors who came to his assistance. Plaintiff carried a pocket knife but did not take it from his pocket and being unarmed fought only with nature's weapons. In the case considered by the Supreme Court Judge KENNISH found evidence to the effect that he used his knife on defendant in the fight in the road, but there is no evidence of such fact in the present record.

The purpose that animated plaintiff in the pur-

suit and combat is stated in the following excerpt from his cross-examination:

"Q. Now you were not following him, were you? A. I was along even with him.

"Q. But when you got over the wire fence you got in front of him, didn't you? A. Which wire fence?

"Q. That north wire fence? A. In the road?

"Q. Yes, sir. A. I was between him and his house.

"Q. Well, then you were not following him there; you were getting between him and his house? A. Yes, sir. . . .

"Q. When you got between him and the house, what did you expect to do if he had gone the other way? You couldn't 'have told where he went? A. No, after he shot me I thought I would get Mr. Varner to catch him before he got to his house if he went the other way, or somehow. I would have got him if I had to go through fire if I could.

"Q. If you wanted to find out who it was why didn't you follow him to his house and see him go in? A. When?

"Q. Whenever he did go in? A. I couldn't after I was left in the road.

"Q. I know, but first. You didn't know you were hurt when you got over that fence? A. No, sir.

"Q. Then why didn't you just let him go along up to his house and follow along and see that he went into his yard gate? A. I thought if I caught him I would have him without following him.

"Q. What were you going to do if you caught him? A. I was going to do the best I could.

"Q. Now, that is indefinite. .. . . A. Well that is the only way I can explain them by what I do. When I got him I called for Mr. Varner and aimed to hold him until he got there.

"Q. I understand, but you said you were following him for the purpose of catching him and doing

the best you could. Now, what did you expect to do?
What do you mean by doing the best you could? A.
I did just what I did do.

"Q. That is what you intended to do? A. I don't
know as I had any intentions at all."

The place where plaintiff was found by neighbors
was about seventy-seven yards west of defendant's
front gate and the facts and circumstances testified
to by witnesses introduced by plaintiff tend to corrob-
orate his statement that the final combat occurred at
that place. Neighbors who lived nearby testified that
they heard two gun shots in plaintiff's meadow and
afterward heard plaintiff's cries for help. When they
went to him he was lying in the road covered with
blood and too weak and helpless to rise. They found
a pocket knife in one of his pockets closed and with
a dime wedged in between the blades. They also found
defendant's unloaded shot gun near plaintiff and one
of the witnesses testified he heard defendant's gate
click as it always did on being opened and closed.

Defendant's account of the affray is even stranger
than plaintiff's. He states the shooting occurred on
his own premises in his effort to repel an unknown
marauder. For some time, so he says, he and his
family had been alarmed at intervals by someone
prowling around their house who on one occasion had
entered the house one afternoon during an absence
of the family. The last nocturnal visit occurred three
or four weeks before the tragedy but the uneasiness
of the family had increased and defendant determined
to put an end to its cause. Accordingly one afternoon
he constructed a rude sentinel box in the woodpile
out of stovewood and, armed with his shotgun, sta-
tioned himself in the box after nightfall. At about
seven o'clock he observed a man steal up to a window
of the living room and peer in. The men then went
around the house but returned in a moment to the win-
dow and acted as though he intended to enter the room

through the window or, perhaps, shoot into the room. Defendant then fired at the man's legs and advanced toward him. The man ran west towards the front gate and defendant fired a second time at his legs and began a pursuit. The man was halted at the front gate, overtaken by defendant and a struggle began between them. They fell to the ground in "a dog fall" but the man (discovered to be the plaintiff), succeeded in getting on top and reached for his knife which he drew from his pocket and opened. While he was doing this, defendant got the upper hand and drew his own knife and opened it. The two then slashed each other and seeing that one or the other would be killed, defendant broke loose and fled to the house, leaving his gun and knife behind. Defendant sustained a cut on one of his fingers and an abrasion on his face but the doctor who was called that night found that the abrasion was not a knife wound. The next morning neighbors who called on defendant made an examination of the premises and found birdshot in the boards of the house under the windows and marks of the impact of shot against the foundation stones. They also found a fresh gun wad between the woodpile and the window and another nearer the front gate. Just inside the gate the grass was beaten down and they found there some silver money, a lead pencil and a coat button. The fact that plaintiff was found in a helpless condition seventy-seven yards west of the place where defendant fixes the struggle can be reconciled with the narrative of defendant only on the theory that when defendant abandoned the contest and fled, plaintiff was not helpless and that taking defendant's gun he proceeded along the road towards his own home until overcome by his wounds. The two versions of the tragedy were submitted to the jury in the instructions given by the court and the verdict is a rejection of defendant's story and an acceptance of that of plaintiff.

Counsel for defendant do not contend that the evidence as a whole does not present issues of fact for determination by the triers of fact but do insist that the court erred in refusing to instruct the jury as requested by defendant that if they found defendant acted in the necessary defense of his person in shooting and cutting plaintiff, there could be no recovery. Counsel frankly concede that defendant's evidence raises no issue of self-defense but argue that the evidence of plaintiff does support a reasonable inference that defendant acted in self-defense and, consequently, that since such defense is raised both in the pleadings and the evidence it was one of the issues of fact the solution of which was an essential prerequisite to a proper verdict. "Even if plaintiff's testimony was believed by the jury," say counsel for defendant in their brief, "they would have been warranted in finding for the defendant on the ground of self-defense if the instruction had permitted them to do so. The law requires juries to find the facts by weighing all the testimony from whatsoever source it may come. It is not illogical for one to say to his adversary that 'upon your testimony you are not entitled to recover of me.' A defendant is entitled to have instructions based on the testimony of his own witnesses or his adversary's witnesses or the testimony of his adversary even though such testimony be at variance with his own." [Citing State v. Bidstrup, supra; Hill v. Railroad, 158 Mass. 458; Knorpp v. Wagner, 195 Mo. 637; 1 Ency. of Evidence, 486.]

In answer to this argument, counsel for plaintiff say, first, that the instructions submitted the issue of self-defense and, second, that "defendant having placed his defense on the theory that the plaintiff was wrongfully on his premises on the night of the difficulty and that plaintiff offered him no violence, he should be estopped from changing his position and claiming that he is entitled to an instruction of self-defense arising

from a scene in which he claims he was not one of the actors. If the shooting of the plaintiff occurred at defendant's house, then certainly there is no evidence on which to base an instruction of self-defense, but if the case is made to rest on the plaintiff's testimony alone and the jury having decided that the plaintiff told the truth and that the defendant did not and setting aside for the moment the fact that plaintiff's instructions submitted the question, there was no error in the court's refusal to give defendant's instruction on that point.''

Defendant has the better of the argument on the latter point. It is a fundamental rule of the law of torts that ''the burden lies on the party seeking in a court of justice either to make good his claim for damages arising from the tort of another, or to establish a release from such claim supposing it to be made out against himself by imputing that tort to plaintiff.'' [Orscheln v. Scott, 90 Mo. App. 1. c. 367.] In an action for damages for an assault ''the proof that defendant shot plaintiff prima facie entitles him to a verdict and it devolves on the defendant to show that the shooting was justifiable.'' [Id., p. 368.]

Self-defense is an affirmative defense in such cases just as contributory negligence is an affirmative defense in a negligence case. In the latter class of cases if the plaintiff's own evidence discloses contributory negligence as a matter of law the plaintiff will not be allowed to recover no matter what the defense may be, or if the evidence of plaintiff discloses contributory negligence not as an indisputable fact but as a fact reasonably to be inferred, the defendant under a plea of contributory negligence is entitled to have that issue submitted to the jury though it finds no support in the defendant's evidence. The same is true on an assault case. If the plaintiff's evidence shows conclusively that the injury was inflicted in necessary self-defense, the plaintiff has no case or if the

evidence of plaintiff will support a reasonable conclusion of self-defense, that issue should be sent to the jury if it be raised by the answer notwithstanding it may be without support in the evidence of the defendant. A defendant testifying in his own behalf is not so bound by his own admissions as to be precluded from availing himself of defenses brought out in the evidence of his adversary. A plaintiff must recover, if at all, on the strength of his own case not on the weakness or falsity of the defense. "A suitor who testifies is but a witness after all." [Knorpp v. Wagner, 195 Mo. 661.] "The testimony of a party to the suit cannot be taken as an admission in that action of the truth of any fact but only as evidence like that of any other witness." [1 Ency. of Ev., 486.] The rule that a party may rely on the testimony of the witnesses of the adverse party to prove a defense or material facts denied by his own testimony (Hill v. Railway, 158 Mass. 458) is recognized and applied by the Supreme Court in the criminal case that grew out of the affair in question (State v. Bidstrup, supra), and may be accepted as settled.

It is a sufficient answer to the first point in plaintiff's argument to say that the instructions clearly show the issue of self-defense was not submitted.

But the most difficult question confronting us is this: Does the evidence of plaintiff offer any reasonable support for an inference that the injury of plaintiff was justifiable? If we were untrammelled in our decision we would hold against the contention of defendant that it does. Here were two men at enmity. Defendant armed himself with a loaded shotgun and went on plaintiff's premises on a dark night in a manner demonstrating beyond peradventure that he was there with felonious intent. If his purpose was not hostile—if he was not bent on mischief—why did he go armed to his enemy's house in blackness of night,

prowl around and then flee in wild terror when suddenly surprised?

His position may be likened to that of a burglar caught in the act of housebreaking. He was attacking plaintiff in his own home and how can it be said that plaintiff was not justified in repelling such invasion? One whose home is the object of such felonious assault is not bound to content himself merely with a repulse of his assailant but he has the right to pursue the criminal, to capture him that he may be handed over to justice and punished for his crime. The criminal has no right of self-defense in such pursuit and capture and if to escape he injures his pursuer he but adds to his crimes, no matter how great may be his apprehension that if overtaken he may receive serious injury from the wrath of the pursuer. In the present instance the pursuit immediately and continuously followed the discovery of the marauder which occurred while he was in the very commission of his offense.

At what point in the chase did plaintiff cease to be the lawful protector of his fireside and become a wrongdoer, an unlawful aggressor, against whom defendant had the right of self-defense? Plaintiff did not certainly know whom he was following until after the first shot was fired when, for the first time, defendant spoke. His act in continuing the pursuit after that event was not wrongful but righteous. There is no evidence that he contemplated greater violence than the subjection and capture of defendant demanded. He was unarmed. His pocket knife was in his pocket. At no time did he use it or even attempt to use it. He fought with nature's weapons in a just cause against an armed man and at no time was in the wrong. It is true defendant says plaintiff cut him with a knife in a struggle not in the public road but on defendant's premises and under entirely different circumstances from those described in the evidence of plaintiff. The jury discarded the evidence

of defendant *in toto* as a tissue of falsehood. With the case in such peculiar posture we do not deem it permissible to take an isolated fact from the discarded evidence and tack it on to the plaintiff's evidence with which it is irreconcilable and by such process piece out an evidentiary hypothesis of self-defense. The cut on defendant's finger might have been caused by his own knife while he was using it against plaintiff and of itself is no evidence that it was inflicted by a knife in the hand of plaintiff.

But we find the opinion of the Supreme Court in the criminal case leaves us no room in which to decide the questions before us in accordance with the foregoing views. The court finds as a matter of law that the invasion of plaintiff's premises by defendant was not an unlawful act and that plaintiff's pursuit of and attack on defendant were of a character to support an inference that defendant became invested with the right of self-defense. We quote from the opinion:

"It does not appear that the defendant was doing an unlawful act when near Brubaker's home, nor does it appear why Brubaker was pursuing him, especially after he knew that the man running from him was the defendant. The fact that when Brubaker was advancing upon the defendant he said nothing but continued to advance, even after the first shot was fired and he was warned not to come nearer, strongly indicates that he was bent upon doing the defendant bodily injury. Brubaker's subsequent conduct, in getting over the fence and closing with the defendant, after the fierce encounter in the field, together with the testimony that while fighting in the road Brubaker cut defendant with a knife, tends to prove a felonious purpose and intent of Brubaker in pursuing the defendant and in advancing upon him when the shots were fired. And we think the foregoing facts and circumstances

tended to prove that when the defendant fired the shots he had reasonable cause to believe that he was in immediate danger of great personal injury.

"While self-defense is a law of necessity, yet, if a person has reasonable cause to apprehend immediate danger of death or great personal injury, he has a right to use such force as appears to him to be reasonably necessary to protect himself against such impending danger. In Kelley's Criminal Law and Practice, section 519, discussing this subject, it is said: 'It is not essential, however, to this defense, that a felony was actually about to be committed or that the peril of great personal injury should be really imminent. If from the nature of the attack and attending circumstances, there is reasonable cause to believe there is a design to commit a felony on the person, or to do some great personal injury, and also reasonable cause to believe that such design is about to be accomplished, the killing will be justified, although it should turn out that the appearances were false, and there was no design to do any serious injury, or danger that it would be done. A man has the right to act upon the appearances. He is not obliged to wait until the nature and object of the attack are fully developed, nor to look beyond the apparent means of doing harm to ascertain whether the party is capable of accomplishing the violence actually threatened and about to fall upon him, as he may honestly and reasonably believe.'

"Whether the defendant had reasonable cause to apprehend immediate danger of death or great personal injury, was a question for the jury. It was not the province of the court to determine the facts from the testimony of these two witnesses, so diametrically opposed and so conflicting, upon the most material facts in issue. It was the duty of the court to instruct the jury, upon the assumption of the truth of the testimony for the State as well as the testimony for the

defendant, leaving it to the jury to find the facts and determine the guilt or innocence of the defendant under proper instructions applicable to every phase of the testimony before them.''

We are bound by this analysis of the facts and law of the encounter which, obviously, applies with equal force to the civil as to the criminal case and, therefore, are constrained to hold that the learned trial judge erred in not giving defendant's self-defense instructions and in giving plaintiff's instructions ignoring that issue. Further we hold that error was committed against defendant in the ruling on evidence complained of in point three of defendant's brief. The opinion evidence elicited clearly invaded the province of the jury.

We find no other error in the record but for those noted the judgment is reversed and the cause remanded. All concur.