GEORGE ORSCHELN, Respondent, v. J. B. SCOTT, Appellant.

Kansas City Court of Appeals, December 2, 1901.

1. Assault and Battery: EXEMPLARY DAMAGES: EVIDENCE: INSTRUCTION. The evidence is examined and held insufficient to submit the question of exemplary damages to the jury.

2. ———: CONSPIRACY: EVIDENCE: INSTRUCTION. The evidence is examined and held sufficient to send to the jury the question of conspiracy between plaintiff and another to assault the defendant.

3. ———: DAMAGES: AGE: EVIDENCE: AUTOPTIC PROFERENCE: INSTRUCTION. Held, on a review of authority, that although there is no testimony in regard to the plaintiff's age, yet

Orscheln v. Scott.

his age may be submitted on the observation of the jury when he has been before them as a witness; but before promulgation of the opinion the ruling is modified on authority of Phelps v. Salisbury, 161 Mo. 1.

4. ——: ——: EVIDENCE: EXHIBITION OF EMPTY EYE-SOCKET: PITY. Although in an action for assault and battery the exhibition to the jury of the plaintiff's empty eye-socket may tend to excite pity and sympathy, yet it is the best evidence in regard to the extent and character of the injury.

5. ——: SELF-DEFENSE: BURDEN OF PROOF: INSTRUCTION. The burden of proof is on the plaintiff to establish the assault and battery charged, but he is not required to show that the striking was not done in the necessary defense of the defendant and an instruction to that effect is properly refused.

Appeal from Cooper Circuit Court.—*Hon. T. B. Robinson,* Judge.

REVERSED AND REMANDED.

*W. M. Williams, John Cosgrove* and *J. W. Jamison* for appellant.

(1) Error was committed in awarding plaintiff exemplary damages. Badostain v. Grazide (Col.), 47 Pac. Rep. 118; Niff v. Youman, 86 N. Y. 324; Lee v. Woolsey, 19 Johns 321; Carson v. Smith, 133 Mo. 617. (2) There was no evidence of the age of plaintiff, and it was error for the trial court to direct the jury to "take into consideration the age of plaintiff" in assessing the damages. This court has reversed two cases for a similar error, and upon that ground. Hines v. City of Marshall, 22 Mo. App. 208; Gessley v. Railroad, 26 Mo. App. 156. The same rule has been followed in other states. Bird v. State (Ind. 1885), 3 N. E. 827; Stephenson v. State, 28 Ind. 272; Ihinger v. State, 53 Ind. 251; Robinius v. State, 63 Ind. 235; Swigart v. State, 64

Ind. 598. (3) The court improperly refused to instruct the jury that the burden was upon plaintiff to prove the defendant wrongfully assaulted him, and the injury of which he complains was not inflicted upon him by defendant in resisting plaintiff's attack, and in the necessary defense of himself. Nichols v. Winfrey, 79 Mo. 544; Orscheln v. Scott, 79 Mo. App. 534. It was material to defendant that the jury should be properly advised as to the burden of proof. The failure to do so constitutes reversible error. Mansur-Tebbetts Implement Co. v. Ritchie, 143 Mo. 610; Albert v. Besel, 88 Mo. 153. (4) The exhibition of plaintiff's sightless eye to the jury during the progress of the trial, could serve no just purpose in the case. Defendant's objection to this exhibition should have been sustained, under the circumstances disclosed in this record. There was no dispute between the parties concerning the nature and extent of plaintiff's injury. Railroad v. Clausen, 50 N. E. 680; Railroad v. Pearson, 97 Ala. 211. (5) The instruction given at plaintiff's instance, directing the jury to exclude from consideration, in making up their verdict, the actions and conduct of Angelus Wilson, and the refusal of the Court to give the converse of that proposition, embodied in an instruction asked by defendant, were not only erroneous but exceedingly injurious to defendant. He was thereby deprived of the right to have the jury consider what action he might properly take, and what force he might rightfully use in view of an attack upon him by plaintiff in front, with Angelus Wilson, plaintiff's friend, a few feet in the rear, cursing defendant and threatening him on account of plaintiff's imagined grievance. Orscheln v. Scott, 79 Mo. App. 534; Thornton v. Taylor (Ky.), 54 S. W. 16; State v. Gooch, 105 Mo. 392.

. *W. F. Quigley, W. D. Steele* and *C. D. Corum* for respondent.

(1) The appellant's first complaint arises because the court submitted to the jury an instruction, under which they might award plaintiff exemplary damages.   Appellant admits in his brief that respondent was retreating when his eye was cut out.   The weight of the testimony tends to show that plaintiff had retreated from eighteen to twenty-two feet when the blow was struck.   State v. Higgerson, 157 Mo. 402; State v. Musick, 101 Mo. 260; State v. Grant, 144 Mo. 56.   (2) Again, this question of defendant's malice and intent was placed squarely before the jury in the first instruction given on behalf of the defendant, as well as in the third instruction given on behalf of plaintiff.   Goetz v. Ambs, 27 Mo. 28; Brantz v. Marcus, 35 N. W. 115.   (2) Appellant contends that the court committed error in instructing the jury that "in estimating the actual damages, if any, the jury may take into consideration the age of plaintiff," etc.   He asserts that no evidence of plaintiff's age was offered.   He declares quite positively that:   "This court had reversed two cases for a similar error, and solely on that ground."   He cites in support of that proposition the case of Hinds v. City of Marshall, 22 Mo. App. 208, and Gesley v. Railroad, 26 Mo. App. 156.   The authorities do not support the statement made by the counsel. Neither case was reversed solely on the ground that there was no evidence of the age of plaintiff.   It has been held here, when the jury were required to find the defendant in a criminal case was over the age of sixteen years, that the "jury could use their own eyes in determining that fact."   State v. Thomson, 155 Mo. 306; Snodgrass v. Bradley, 2 Grant's Cases (Pa.) 43.   (3) As to the burden of proof:   The defendant complains, because the court refused to give an instruction that the burden of proof was on the plaintiff to show that defendant wrongfully struck him with a knife, and that the same was not done in the necessary defense of defendant's person.   He relies solely on the case of Nichols v. Winfrey, 79 Mo. 544.

True, he cites Orscheln v. Scott, 79 Mo. App. 534, but we fail to discover in the opinion in that case a single observation concerning the burden of proof. We do not think that the Winfrey case decides that the jury ought to be instructed that the burden is on the plaintiff to prove that the defendant did not act in self-defense and that his act was wrongful. (4) Under the plea of *son assault demesne* the burden of proof is on defendant, who is bound to show that the plaintiff actually committed the first assault; and, also, that what was thereupon done, on his own part, was in the necessary defense of his person. O'Leary v. Rowan, 31 Mo. 117; 2 Greenleaf on Evidence, sec. 95; Gizler v. Witzel, 82 Ill. 322; Blake v. Damon, 193 Mass. 199; Harvey v. Dunlap, Hill and D. Supp. 193; Trogden v. Henn, 85 Ill. 237; Philbrick v. Forster, 4 Ind. 442; Dole v. Erskine, 35 N. H. 503; Close v. Cooper, 34 Ohio St. 98; O'Leary v. Rowan, 31 Mo. 117; State v. Schloss, 93 Mo. 361; State v. Evans, 124 Mo. 411; State v. Grant, 76 Mo. 236; State v. Tabor, 95 Mo. 585. (5) Appellant's next contention is that the court erred in permitting plaintiff ⹂to exhibit to the jury, during the trial, his sightless eye. It is true that the court permitted plaintiff to stand where the jury might see; but it is not easy to conceive how the trial could have proceeded to a determination, without the jury having seen just what they did, unless the court should have ordered plaintiff to conceal his injuries, and we know of no authority under which the court would have been warranted in doing that. In permitting the jury to see plaintiff's injuries, the court made no mistake. Thompson on Trials, sec. 858; Railroad v. Clausen, 50 N. E. 680; Haynes v. Trenton, 123 Mo. 335; Jackson v. Wells, 35 S. W. 528; Selleck v. City of Janesville, 41 L. R. A. 563; Carrico v. Railway, 39 W. Va. 86; Railway v. Carroll, 31 S. W. 132. (6) Appellant's final complaint is that the court ought to have given the instruction asked by them in reference to a conspiracy between plaintiff

and Wilson. A foundation must first be laid by proof sufficient in the opinion of the trial judge to establish prima facie, the fact of a conspiracy. It was a matter for the trial court to say whether there was any evidence tending to show conspiracy, and that court found there was no such evidence. Orscheln v. Scott, 79 Mo. App. 534; State v. Ross, 29 Mo. 51; Hart v. Hicks, 129 Mo. 99; State v. Walker, 98 Mo. 95.

ELLISON, J.—This is an action for damages alleged to have resulted to plaintiff by reason of defendant's assault upon him with a knife whereby one of his eyes was cut out. The verdict and judgment in the trial court was for plaintiff in the sum of $3,000. Of this sum the verdict stated that $2,500 was for compensatory and $500 was for punitive damages. The answer, besides a general denial, pleaded plaintiff's own first assault. The case was in this court prior to this and will be found reported in 79 Mo. App. 534.

The trial court, over defendant's protest, instructed the jury that they might allow, in addition to compensation, exemplary damages if they found for plaintiff. The objection to this instruction has made it necessary for us to go over the testimony preserved in the record that we might be able to say whether defendant was so far at fault as to justify his punishment in addition to making compensation for the injury inflicted.

Plaintiff lived near a railroad station called Vermont and defendant lived at Bunceton on the same line of road, the two places being from three to five miles apart and both in Cooper county. The assault occurred at Bunceton. Plaintiff owed defendant something over three thousand dollars and had secured the payment thereof by a mortgage or deed of trust on his farm. Interest was due defendant on this indebtedness and on the day of the difficulty defendant had started from Bunceton to plaintiff's farm to collect the interest, but

on going to the morning train for that purpose was told that plaintiff was at Boonville, the countyseat of Cooper county, where he had just finished trying a case against the railway, and that he would pass through on the evening train. Defendant, therefore, went to the evening train and found the plaintiff there under the influence of liquor. It was shown that he had been to Boonville trying the case aforesaid, the day before, and that he remained over to the next day drinking considerably in company with one Wilson until the evening train came when he and Wilson, in possession of a bottle of whiskey, got aboard, continuing their drinking between Boonville and Bunceton. Plaintiff and defendant do not agree in words as to what took place at the train. Yet it is clear enough, even from plaintiff's version, when all proper and legitimate inferences are drawn therefrom, that when defendant asked him about the interest and thus found out his condition and learning his refusal to pay, defendant was anxious to break off the conversation and leave him; that defendant undertook to go out of the car; that plaintiff took hold of him for the purpose of detaining him; that defendant persisted in leaving and that plaintiff followed him to the platform, insisting on talking to him, and finally laying hands on him to further detain him; and that defendant pushed him back and went away. It appears in the clearest way that defendant did not want to discuss the matter with him and that he left the railroad station with no thought of any further meeting and with no knowledge that plaintiff would not remain with the train and proceed on to Vermont, near which station was his farm. But plaintiff did not continue on his way. He remained in Bunceton, he says, to try to sell some hogs, with the proceeds of which he could pay a portion of the interest. Whatever his object, he met defendant, when, according to his own statement, the subject was again brought up by him. Plaintiff says they met on the street the second time, when the assault followed. But

there is no pretense that defendant sought this meeting. Again the interest subject was mentioned and, as plaintiff says, when defendant refused to give him time for the payment he told him that he was trying to "trick him," and that thereupon the defendant called him a vile name and that he then advanced upon defendant, saying that he had no right to use that language to him. Then, according to plaintiff's testimony, defendant began to strike at him with his fist and he retreated, warding off the blows, and when he had backed from ten to twenty feet defendant struck him with a knife, which he had presumably taken from his pocket during the encounter. Plaintiff stated that they had always been friends and that up to the time of the harsh words at the last meeting they had not been angry and their talk had been friendly. But if we leave the mere word-recital in plaintiff's testimony in his own behalf and connect it with the evidence given by the other witnesses to the difficulty introduced by him, we find that it shows plaintiff to have been the aggressor. That he was striking at defendant, the latter backing away and asking him several times to go away, or to stand back. That defendant's hat had been knocked off or had dropped off. That after he had backed perhaps twenty feet he began an advance on plaintiff, the latter backing and striking for nearly the same distance, when defendant struck him with the knife. That plaintiff after being cut in the eye asked defendant what he did it with, that he could not have done it with his fist. That defendant answered he had cut him because he had first said he was going to cut defendant, and that he had been trying to evade him all evening.

The evidence was so overwhelmingly against any such willful, wanton and malicious state of mind on defendant's part as would justify the submission of the question of exemplary damages to the jury, it was clearly error to submit it. The result of the difficulty was most unfortunate. But the

conceded relation of the parties; the continued effort made by
defendant to avoid the difficulty; the showing made by plain-
tiff's own witnesses that defendant retreated in the first in-
stance and repeatedly asked plaintiff to desist, leads inevitably
to the conclusion that but for plaintiff's own conduct, most
likely produced by his condition, the difficulty would not have
occurred. And while we do not say that defendant is not
liable to render compensation for the severe injury inflicted,
we quite willingly hold the case is not such as justifies exem-
plary damages.

It was a part of defendant's defense that a concert of
action or conspiracy existed between plaintiff and his com-
panion Wilson, to assault him. He introduced evidence for
the purpose of showing the conspiracy. The court, not deem-
ing this evidence sufficient upon which to base a finding with-
drew it from the jury and instructed them that there was no
evidence tending to establish such conspiracy. In such action
we think the court underestimated the evidence on that head.
There was evidence tending to show that plaintiff and Wilson
had been together that day in Boonville and were drinking
together in saloons; that they procured one, perhaps two, bot-
tles of whiskey which they used in common; that they took
one of these with them on the train and each drank therefrom
between Boonville and Bunceton; that during the evening after
leaving the train they were together, or near each other, and at
each meeting between plaintiff and defendant (including the
last one), Wilson was near by. That he interfered in their
conversation more than once and made demands on defendant
concerning plaintiff's indebtedness. In other words, he at-
tempted to make plaintiff's trouble his own up to the point of
actual conflict. At one point of his interference between them,
and after having been told by defendant to keep away from
them, he said to a third party, "if I had anything to do with
it, or Scott had trouble with me I would cut his heart out,"

and that, "Orscheln was the wrong man for Scott to have trouble with." That "he (plaintiff) could whip hell out of him." The evidence further tended to show that during this time he had a rock in his pocket. It was error to refuse defendant an opportunity to go before the jury on this branch of the case.

The court gave an instruction that in estimating the damages the jury could consider the age of plaintiff. He was before the jury and, as already stated, was a witness in the cause. Yet there was no evidence offered as to his age, and the defendant claims that such omission rendered the instruction improper. It was held by this court in two personal injury cases that in the absence of evidence offered in that behalf, it was error to give such instruction. Hinds v. City of Marshall, 22 Mo. App. 208; Gessley v. Railroad, 26 Mo. App. 156. Notwithstanding these cases, we are of the opinion that in a case of this nature, calling for a character of damages which are not the subject of ascertainment with mathematical precision, the inspection and observation of the jury is all that is necessary as a base upon which to place an instruction as to age. The question of age has its influence chiefly as to prospective damages during the life of the party. Such damages are necessarily uncertain and their mode of ascertainment is necessarily indefinite, and much is necessarily left to the sound sense and discretion of the jury. This is constantly repeated in adjudicated cases in this State and elsewhere. It is not necessary to fix an *exact age* in order that the jury may estimate the future. In cases of this character, it is of no practical importance to know the *precise* age. It is not a case of that kind. It would make no appreciable or substantial difference in the jury's estimate of probable future damages, whether the injured party was ten, or twelve years of age; or, whether he was forty or forty-one, two, three or four years old. Mortality tables are not necessary as evidence. If this is not true,

then the age to the month and day should be proven. And if the age is not known, even by the plaintiff himself, as is sometimes the case, the jury would not be at liberty to make any estimate, in that respect, of future damages. Their observation of the person himself during the trial would be of no importance. It seems to me, therefore, that the observation of plaintiff by the jury was sufficient as a basis from which to estimate the damages.

"Inspection is to be regarded rather as a means of dispensing with evidence than as evidence itself. That which the court or jury sees, need not be proved. The appearance of a defendant, for instance, so as to make up a basis of comparison in cases of identity, need not be proved by testimony, when the defendant appears in person at the trial. By the Romans, this method of proof is frequently noticed. . . . . Nor is it only the immediate object presented to the eye that is thus proved. Inferences naturally springing from such appearances are to be accepted; age, bodily strength, being thus inferred. . . . ." 1 Wharton on Evi., sec. 345.

Greenleaf (Vol. 1, sec. 13a) says, that the court has at its disposal for the ascertainment of fact "self-perception or self-observation, *autoptic proference;* i. e., the presentation of the object itself for the personal observation of the tribunal." And in sections 13b to 13d he approves of establishing age by observation. So it has been decided, and that, too, in criminal cases, that observation of the jury could be relied upon to establish the age of an accused. State v. Emmons, 98 Mass. 6 (approved in Keith v. Railroad, 140 Mass 175); State v. Arnold, 13 Ired. 184; State v. McNair, 93 N. C. 628. We regard this view as having met the approval of our Supreme Court in the case of State v. Thompson, 155 Mo. 300. In that case it was necessary to establish that the defendant was over sixteen years of age. He was a witness and Judge GANTT said: "Not only could they (the jury) use their eyes

in determining that fact, but the defendant testified that he was a graduate," etc. And so, on kindred subjects, the same rule has frequently been laid down. Thus, observation of resemblance between father and child, when the latter is old enough to have distinctive features, will establish the paternity of the party alleged to be the father. State v. Smith, 54 Iowa 104; State v. Horton, 100 N. C. 441; Clark v. Bradstreet, 80 Maine 454; Gilmanton v. Ham, 38 N. H. 108; State v. Woodruff, 67 N. C. 89; Gaunt v. State, 50 N. J. 490. And observation will suffice to show race or color of person. Garvin v. State, 52 Miss. 207; Warlick v. White, 76 N. C. 175.

Indeed, it is universally conceded that where the party in question is absent, the opinion of the witness as to his age, formed from his appearance, is competent evidence: Lawson on Expert and Opin. Evi., 528; Rogers on Expert Test., 10; Elsner v. Sup. Lodge K. of H., 98 Mo. 645; State v. Douglass, 48 Mo. App. 39; Commonwealth v. O'Brien, 134 Mass. 198; State v. Bernstein, 99 Iowa 5; Jones v. State, 32 Tex. Crim. App. 108; Brice v. State, 37 Tex. Crim. App. 38; Garner v. State, 28 Tex. Crim. App. 561; Benson v. McFadden, 50 Ind. 431; State v. Grubb, 55 Kansas 678. Now it is manifest that if an ordinary non-expert witness may form an opinion of an absent person's age from his appearance, and may give that opinion in evidence, the jury also can form an opinion from the appearance of the party who is present before them during the trial, especially when he is both a party and a witness. Why should a witness testify to that which the jurymen see for themselves? If a black man is before a jury as a party and witness, must others be called upon to tell the jury that he is black? Where a jury has as much opportunity for knowledge of a non-expert subject as anyone else, it is idle to call others to tell them what they already see and know. If the witness agrees with the

jury's observation, his testimony is useless, and if he testifies in the face of what they see for themselves, they will refuse to credit him.    The very question now before us was decided in Commonwealth v. Emmons, 98 Mass. 6, supra.    That case was a prosecution charging the defendant with permitting two minors to play billiards at his place.    One of them was a witness, but there was no proof of his age, and the trial court "ruled that the jury might determine by personal inspection of him whether or not he was a minor."    On appeal, the Supreme Court of Massachusetts said:

"There is nothing in the bill of exceptions from which it can be inferred that the defendant was aggrieved by the ruling of the court in permitting the jury to judge whether one of the alleged minors was under age, from his appearance on the stand.    There are cases where such an inspection would be satisfactory evidence of the fact.    It certainly was not incompetent for the jury to take his appearance into consideration in passing on the question of his age; and, as it does not appear that this may not have afforded plenary evidence of the fact, the defendant fails to show that he was convicted on insufficient evidence, or that he has been prejudiced by the ruling of the court."

The principle in that case, as before stated, was approved in Keith v. Railroad, 140 Mass. 175.

So in State v. Robinson, 32 Oregon 43, a case involving rape by a person *over* sixteen years of age upon the person of a female *under* sixteen years of age, the question of the age of both the accused and the prosecutrix was in issue, both being present before the jury.    Of the defendant the court said: "There is obviously nothing in the objection, made in this court for the first time, that the prosecution did not prove that the defendant was over the age of sixteen years at the time the crime is charged to have been committed.    He was necessarily

present in court, and the jury were no doubt able to determine from his appearance that he was over the statutory age."

And of the prosecutrix the court further said: "Joseph Underwood was called as a witness for the defense, and asked to give his opinion as to the age of the prosecutrix, but the court refused to permit the witness to answer, and this ruling is assigned as error. This was not a case for the admission of opinion evidence as to the age of a person. The prosecutrix was present at the trial, and testified at great length, and the jury were just as competent to form an opinion as to her age from her size, appearance, and development, as the witness. The rule that any witness, after carefully describing the appearance of an absent person, may give an opinion as to his age, is unquestioned; but it was not error to exclude such testimony, in the case at bar, where the person whose age was in controversy was present at the trial, as it would have been of no substantial aid to the jury."

It has been made an objection to the foregoing view of the law that there was no way to transcribe the observation of the jury so that an appellate court could review the case as presented, but this has not been considered as insuperable. It is an objection that could be made to all inspection by jury of thing or place which experience has found to be absolutely necessary in many cases. Such objection has been made by some reported cases from Indiana, cited by defendant. Those cases have not been approved by other authorities and a note to Greenleaf, cited above, states that they are regarded as anomalous.

It follows from the foregoing that defendant's objection to the want of evidence as to age is not well founded.

During the trial, plaintiff was permitted, over defendant's objection, to exhibit the empty eye-socket to the jury with the scar above and below. It is said in support of defendant's objection that it was admitted that defendant had cut and

destroyed the eye and that the exhibition to the jury could serve no other purpose than to excite their pity and sympathy. Undoubtedly such was the tendency. But if plaintiff was entitled to make the showing, such result can only be regarded as an unavoidable consequence. It is a result which follows, in greater or less degree, the mere entrance of a maimed litigant into the courtroom. It was a species of real evidence, or, to use Greenleaf's language, of autoptic proference. There was no better way to show the extent of the injury, thereby aiding in the estimate of damages. Haynes v. Trenton, 123 Mo. 335; Thompson on Trials, sec. 858; Carnico v. Railroad, 39 West Va. 86. Such exhibition is generally and rightly treated as a proper process of proof, subject to occasional exclusion in cases of abuse. 1 Greenleaf on Evi., sec. 13f; 2 Taylor on Evi., 3656.

Defendant complains of the following instruction being refused: "The jury are instructed that the burden is upon the plaintiff to show that the defendant wrongfully struck him with a knife and that the same was not done in the necessary defense of the defendant's person, as defined in other instructions, and unless this proof has been made the verdict must be for the defendant."

*Son assault demesne* is affirmative matter which must be pleaded and proved (if not developed in the plaintiff's case) by him who, having committed the otherwise wrongful act, seeks to excuse himself by the plea of its necessity for the defense of his person. While it is true, as stated in the instruction, that the burden rested upon plaintiff to prove that defendant wrongfully struck him with a knife, yet it does not follow that to prove this he should go into issues which must be advanced by the defendant. Proof of the act raises presumptions which characterize it without the necessity of going further and showing affirmatively that none of the various causes which might excuse it existed.

Orscheln v. Scott.

It is held in State v. Evans, 124 Mo. 397, that if it is shown that one intentionally killed another by shooting him, the law presumed it was murder; and that it devolves on defendant to meet such presumption by evidence unless such evidence appears in the State's case. In such case the burden is cast on the defendant to establish such defense as will destroy such presumption. State v. Tabor, 95 Mo. 585. It is said in Wharton's Evidence, section 358: "It is in cases of tort that jurists, both ancient and modern, have found the greatest difficulty in the determination of the question before us. The true solution is this: the burden lies on the party seeking in a court of justice either to make good his claim for damages arising from the tort of another, or to establish a release from such claim, supposing it to be made out against himself, by imputing tort to the plaintiff. Hence, according to the Roman law, he who charges *dolus* or *culpa* on another must prove such *dolus* or *culpa;* while he who, on such case being made out, sets up *casus,* or the contributory agency of the plaintiff, must prove such *casus* or contributory agency. In our own law, it is an elementary principle that a party setting up a tort has the burden on him to prove such tort. Thus, as will presently be more fully seen, when the cause of action is negligence, the plaintiff must prove the negligence; when it is deceit or fraud, the plaintiff must prove the deceit or fraud; when deceit is set up as a defense, the deceit must·be proved by the defendant. If, to a tort, justification is set up by the defendant, the burden is on him to prove such justification. And so when the defendant, to an action for trespass, sets up probable cause on his part to believe that the land belonged to himself, he must prove such probable cause; and when he sets up an attack by plaintiff, he must prove such attack." See, also, to the same effect, 2 Greenleaf·on Evi., sec. 95.

So it was decided by the Supreme Court of this State

that in an action of unlawful and wrongful assault, the proof that defendant shot plaintiff, prima facie entitles him to a verdict, and it devolves on the defendant to show that the shooting was justifiable and that it was not necessary that plaintiff should, in the first instance by direct evidence, show defendant's intention or that he was in fault. Conway v. Reed, 66 Mo. 346. To the same effect is O'Leary v. Rowan, 31 Mo. 117. And so the rule has been established "from the earliest times." Blake v. Damon, 103 Mass. 199. So it has been always understood that such justifications as plaintiff's first assault must be affirmatively pleaded by defendant. Sloan v. Speaker, 63 Mo. App. 324.

Defendant relies on the case of Nichols v. Winfrey, 79 Mo. 544. That case was a statutory action given to certain parties against one who should wrongfully kill certain designated kindred of the plaintiff. There is much said in the case that can find no proper application to the case at bar. But if that case is to be interpreted that proof of an intentional killing with a deadly weapon does not make out a prima facie case of murder without going further and showing that it was not done in self-defense, it has not been recognized since by the Supreme Court, for the contrary, as shown above, has been repeatedly ruled. When the intentional act is shown, then the excuse or justification therefor must be shown by the defendant, and he will be held guilty if he does not, unless the plaintiff's evidence itself discloses such excuse or justification.

The language of the instruction, quoted above in specifically stating that the burden was on the plaintiff to show that the assault upon him was not made by defendant in self-defense, is tantamount to stating that a question of self-defense must first be advanced by the plaintiff. In other words, that plaintiff shall not only prove the intentional assault, but proceed further and negative all the various excuses and justifications which the law allows in such cases. The law has never

Bradley v. German-American Ins. Co.

imposed such duty on a plaintiff. It could with as much or more reason be said that proof of possession of recently-stolen property was not sufficient to establish larceny without going further and showing that the accused did not come into such possession honestly.

For the reasons mentioned the judgment will be reversed and the cause remanded. All concur.

### MODIFYING OPINION.

ELLISON, J.—Since the foregoing opinion was written, but before it was promulgated, we have been cited to the case of Phelps v. City of Salisbury, just reported in 161 Mo. 1, wherein it is held by the Supreme Court that an instruction as to a plaintiff's age when there was no evidence thereof introduced was error; notwithstanding he was present before the jury. Our conclusion on that subject, as expressed in the foregoing opinion, must therefore be considered not authority.