JOHN LEHMAN, Appellant, v. ED LAMBERT.—49 S. W. (2d) 65.

Division One, April 2, 1932.

R. A. Mooneyham for appellant.

Thomas W. Martin for respondent.

RAGLAND, J.—This is an action for damages growing out of an alleged assault and battery. The petition was in the usual form; it prayed for the recovery of compensatory damages only. The answer consisted of a general denial and an affirmative defense. The latter was set forth as follows:

"Further answering, defendant says that while he admits that he struck plaintiff at the time alleged in the plaintiff's petition he denies that such striking was unlawfully, wilfully, maliciously and feloniously done, but avers the fact to be that he went to see plaintiff on a lawful mission, with a peaceful purpose, and to urge upon plaintiff that he cease and desist from using profane and vulgar language and in making insulting remarks in the hearing of the wife and daughters of the defendant and that in his attempt to talk to the plaintiff and reason with him about his offensive and unlawful conduct toward the family of the defendant, the plaintiff became enraged and suddenly reached for and sought to strike the defendant with a wrench or other dangerous and deadly weapon which he was carrying upon his cultivator, and defendant, realizing his peril and danger, was forced to and did strike the plaintiff in the necessary defense of his own person, and for his own safety, and that, in so doing, he used no more force than was necessary to repel plaintiff's assault upon himself, and that immediately following plaintiff's manifestation of anger and his attempt to assault, strike and beat this defendant, plaintiff left his cultivator and gathered clods and rocks and threw same at defendant and manifested a wilful and wanton disposition to assault, beat and injure the defendant. *Defendant further says that for a long time prior to the date of said assault alleged in plaintiff's petition, to-wit: The second day of July, 1926, the plaintiff had persisted in using profane and vulgar language and making insulting remarks in the hearing of the wife and daughters of defendant, and would take advantage of the absence of defendant from his home to thus humilate, degrade and put in fear the wife and daughters of defendant, and defendant further says that his said family by reason of the conduct and actions aforesaid of the plaintiff were put in fear and were greatly distressed and worried and reported the various acts and conduct hereinabove alleged of the plaintiff to this defendant, and, in order to get relief for his family from the taunts, insults, profane and vulgar language used by plaintiff, purposely, wilfully and wantonly, as aforesaid, in the hearing of his said wife and family, and purposely directed by plaintiff toward them as an insult to them and to this defendant, this defendant was driven to the necessity of seeking plaintiff out, as he did do,*

*to induce plaintiff to cease and desist from his aforementioned acts and conduct* and defendant says that if plaintiff sustained any injury at the hands of defendant it was as a result of his own unlawful, wrongful, wanton and wilful conduct and actions as aforesaid, and as a result of his unlawful assault upon and against the defendant, and by reason of defendant's efforts to defend himself from the wilful, unlawful and wanton assaults of the plaintiff aforesaid."

Plaintiff moved to strike out the portion of the answer which we have italicized, on the ground that it did not constitute "any defense whatever to plaintiff's cause of action." The motion was overruled and plaintiff then replied with a general denial.

The alleged assault and battery occurred July 2, 1926, while plaintiff was riding on a cultivator and driving a team of horses hitched thereto, plowing corn. The field lay just across a public road from defendant's premises. Plaintiff was plowing the third or fourth row of corn from the fence next to the road; defendant's house and barn were near the road on the opposite side. With respect to the occurrence plaintiff testified as follows:

"I saw the defendant, Ed Lambert, on my place on the 2nd day of July, 1926. I was plowing corn there close to his house and I came through the field and went down to the west end and headed east and when I went by he stepped out from behind a little tree or some brush and says, 'I will finish with you, you son of a bitch, while I've got you.' He hit me. I thought he hit me with a root of a tree or end of a whip, I couldn't tell for sure. . . . At that time it knocked me unconscious. I don't know whether he knocked me off the cultivator, or whether he pulled me off or whether I fell off. . . . When I started to get up he was there beside me and struck me again. I tried to get away, I got up then, and he followed me. I went across the field. Later I consulted a doctor. . . . Lambert attacked me and there wasn't a word said. Only just before he hit me."

Defendant's version of the affair was somewhat different. He testified:

"I was at home, and Lehman didn't know it. He commenced to cuss the horses the first thing when he let the cultivator down, my wife was cleaning out the granary, and he commenced, 'you God damned sons of bitches, get up, get out of here, you God damned sons of bitches,' and he went on like a crazy man and I just stepped out there, and says, 'did you hear that?' I said that to my wife. She said, 'yes, that is something what we hear all of the time.' I started over there. As I started, as I was going across the yard there laid a piece of a whip that the calves had chewed up and I don't know what made me do it but I picked it up in my hand, he had gone down to the west end of the field. There was some few brush over there,

I crossed the road, got over the fence I suppose fifty feet likely from the end of the turn row where he turned. When he went by me I just called to him but I knew he seen me and he says, 'what have I done?' He drove on out to the end and stopped the horses at the end right against the fence and he says, 'what have I done?' and I says, 'you have done a plenty haven't you?' and he says, 'I don't know,' and I says, 'well, I do,' and I says, 'this has got to stop and I don't mean maybe either.' And just about that time he reached for a wrench and I knew he had knocked a fellow in the head just before that— . . . So I struck him but I didn't knock him off of no cultivator, I am telling you that, and he got off so fast you wouldn't know how it was done and started to run, I never followed him. . . . At the time I went over there I did not intend to to strike him. I was going over there to tell him I just couldn't stand the way he was doing. . . . I wouldn't have struck him if I hadn't thought— . . . That is the reason I struck him, because I thought he was reaching for a wrench to hit me with and I knew he had hit the other fellow, so I thought I better hit him and I did. . . . On my way down there I picked up a piece of an old whip. It had been an old black snake whip. I suppose it was about fifteen inches long. It was the butt end of the whip. I think it was wood covered with leather. I don't think it had lead in the end of it.''

At the trial when the time came for defendant to meet plaintiff's case with evidence, he first put in testimony tending to show that for a period commencing months before defendant's encounter with plaintiff and continuing down to the time of that occurrence plaintiff had used loud and profane language while working in the field across the road from defendant's house, in driving his horses, and in running defendant's chickens out of the field, and while passing along the road had made comments of an offensive nature on what he saw defendant's wife doing. A few excerpts from Mrs. Lambert's testimony will illustrate:

''We were washing an automobile one day and he came by and said 'the damned old bitch is washing her car, ain't she?' . . . That was in the spring of 1926 we were washing the car. . . . Then on another occasion, this was about the last of May, in lettuce time, 1926, as near as I can remember, and I was out in the garden getting some radishes and lettuce, and he was over in the field cultivating corn and he says: 'Well, the damned old bitch is going to have lettuce for dinner.' . . . He was standing on the cultivator urinating. He was turned right straight to the north. Towards us folks. That was when they were cultivating corn, in June, 1926. . . . The language he used on occasions when he would be farming along close to our house was always 'you son of a bitch get up; you dirty, rotten son of a bitch,' continuously. He would be close enough to our premises that I could hear it. He was close to the road.''

Defendant's fifteen year old daughter followed her mother on the stand and testified to the same occurrences. The defendant then took the stand and testified in great detail to all of the same incidents which had been related by his wife and daughter, saying that they had been reported to him by them from time to time as they had occurred. He also testified that plaintiff in the preceding March had strewn some straw along the fence in plaintiff's field opposite defendant's house and had set the same on fire when a strong wind was blowing toward defendant's house and barn. To all this testimony the plaintiff strenuously objected on the ground that it did not constitute any defense to his action. His objections, however, were promptly overruled by the court.

Defendant further testified in connection with the above that the plaintiff was a bootlegger, and gave in detail various incidents that led him to believe that plaintiff was violating the liquor laws. No objection, however, seems to have been made to this.

The trial court at defendant's request gave, among others, instructions numbered 2, 3, 4 and 5. Instruction 2 told the jury that it devolved upon plaintiff to prove by the greater weight of the evidence "that the defendant did wilfully and without lawful provocation assault and beat plaintiff." Instructions 3 and 4 were conventional self defense instructions. Instruction 5 was as follows:

"The court instructs the jury that even if you should believe from the evidence that the defendant assaulted plaintiff first and not in self defense, yet, if you shall further believe from the evidence that plaintiff provoked and brought on the altercation by his previous conduct and actions in cursing and using profane and vulgar language and offering insults toward the wife or other members of the family of defendant, and that defendant struck the plaintiff in resenting such language and insults, if any, then the plaintiff is not entitled to recover punitive damages as prayed for in his petition."

The jury returned a verdict for the defendant. From the judgment entered in accordance therewith plaintiff prosecutes this appeal. The amount of the recovery sought gives us jurisdiction.

Appellant assigns as error: (1) the overruling of his motion to strike out a portion of defendant's answer; (2) the admission of evidence in support of the allegations of the answer which he sought to have stricken out; and (3) the giving of the instructions above referred to.

I. The alleged language and conduct of plaintiff as set forth in the portion of the answer which he asked to have stricken out, however censurable they may be deemed to be, did not excuse or justify the assault and battery committed upon him. "Peace and good order and the rules of civilized society forbid that individuals shall right their own wrongs." [2 R. C. L. 554.] Nor were they provable in mitigation of damages, only actual damages being asked.

[Coxe v. Whitney, 9 Mo. 531; Collins v. Todd, 17 Mo. 537; Joice v. Branson, 73 Mo. 28; Bond v. Williams, 279 Mo. 215, 214 S. W. 202.] On the theory that they could be shown in support of defendant's plea of self defense, they were mere matters of evidence and had no place in a pleading. Plaintiff's motion to strike should have been sustained.

II.  Respondent contends that the evidence of plaintiff's offensive acts and of the use by him of opprobrious languge, in the view and hearing of defendant's wife and daughter, was admissible as tending to show plaintiff's hostility to defendant, and consequently the reasonableness of the latter's apprehension of danger when he saw plaintiff reached for the wrench on the cultivator. [State v. Burns, 312 Mo. 673, 280 S. W. 1026.] Such acts and language, however, were pleaded in justification,—as a complete defense. When the evidence with respect to them was offered, there was no intimation on the part of defendant's counsel in offering it, nor on the part of the court in receiving it, that its purpose was limited to showing the reasonableness of defendant's apprehension of danger when he struck plaintiff. In fact the trial proceeded on the theory, apparently, that plaintiff's antecedent behavior justified defendant in striking him. The jury doubtlessly considered that plaintiff get what he richly deserved. Respondent's present contention is evidently an afterthought. But even so, if sound it must be sustained.

If plaintiff's previous conduct, which had been so offensive to defendant's wife and daughter, evidenced hostility to defendant, the latter knew it when he picked up the butt end of a black snake whip on his way to interview plaintiff. Yet, he says that he did not know why he took the whip. When he saw plaintiff reach for the wrench did this same previous conduct of plaintiff come into his mind? Not at all. It merely occurred to him that plaintiff had once knocked another fellow in the head, and therefore he had better strike first. Not once did defendant in his testimony intimate that the previous conduct of plaintiff to which he had testified at great length caused him the slightest apprehension of danger at the time of their encounter. The admission of the evidence in question was error.

III.  1.  The striking of plaintiff was admitted by defendant. The effect of his instruction No. 2 was to place upon plaintiff the burden of proving that such striking on the part of defendant was not in the necessary defense of his person. This was error. The striking was presumptively unlawful. It devolved upon defendant to justify it. [Orscheln v. Scott, 90 Mo. App. 352.]

2.  "The law does not permit a person voluntarily to seek or invite a combat, or to put himself in the way of being assaulted, so that

when hard pressed he may have a pretext for injuring his assailant.'' [2 R. C. L. 549.] The testimony of defendant on which his self defense instructions were based may be reasonably, though not necessarily, construed as showing that from beginning to end he was the aggressor in his encounter with plaintiff. There must have been something menacing in his attitude and manner as he approached plaintiff with the whip stock in his hand, for the first thing plaintiff said was ''What have I done?'' He immediately answered, ''You have done a plenty . . . this has got to stop and I don't mean maybe.'' Plaintiff reached for a wrench and defendant immediately struck him. Then plaintiff ''got off (the cultivator) so fast you wouldn't know how it was done and started to run.'' Defendant's threatening attitude, if such it was, as he came toward plaintiff with a weapon in his hand, in connection with the language he used, might reasonably be considered as justifying plaintiff in reaching for the wrench, if he did. In other words, if the necessity for defending himself was of defendant's own creation, it did not operate to excuse him. The self defense instructions given on his behalf should have been qualified accordingly. [Renfro v. Barlow, 131 Ky. 312; Morris v. McClellan, 169 Ala. 90.]

3. As plaintiff's petition prayed only for compensatory damages, there was no question of punitive damages in the case. Instruction 5 should not have been given, it was confusing and misleading.

For the errors noted the judgment of the circuit court is reversed and the cause remanded. All concur.