P. H. CUNNINGHAM, Plaintiff-Appellant,

v.

J. D. REAGAN, Defendant-Respondent.

No. 43972.

Supreme Court of Missouri.

Division No. 1.

Dec. 13, 1954.

Baker & Baker and Frazier Baker, Fulton, for appellant.

D. M. Cuthbertson, Fulton, for respondent.

COIL, Commissioner.

P. H. Cunningham, plaintiff-appellant, claimed $15,000 actual damages for an assault and battery which he alleged was committed upon him by defendant-respondent Reagan. There was a defendant's verdict and plaintiff has appealed from the ensuing judgment contending, inter alia, that the trial court erred in failing to direct a verdict for plaintiff on the issue of liability. We think that contention must be sustained. We shall hereinafter refer to the parties as they were designated in the trial court. Defendant has not filed a brief.

Plaintiff and defendant had executed a written contract whereby plaintiff rented to defendant certain farm land for a period of one year, all or part of which defendant planted in soybeans. On April 9, 1952, defendant and his son were harvesting the beans. Plaintiff arrived in the field on a tractor and defendant struck plaintiff in the face under circumstances related by the three present. Defendant said: "Well, he [plaintiff] drove up there with the tractor, why, he said, 'That ground sure is wet over there' and I said, 'Yes, it is and you didn't have to drive on it to find that out' and I said, 'I've told you before, Pat, not to get on them beans and tear them up and I am telling you again to stay off of them' and so when I said that, why, there was something said—I don't remember just what he said then—but he told me how much he had tried to help me while I was down there and I said, 'You haven't done nothing only tried to aggravate me and make me mad in every way' and he said, 'You are a lying son of a bitch' and I slapped him.

"Q. How did you slap him? A. Open-handed, right across the mouth.

"Q. Is that the only blow that was struck? A. That's the only blow.
* * *

"Q. And prior to the time that you struck him had he refused to get off—A. Well, he didn't get off.

"Q. Had you ordered him off? A. I did."

Defendant's son, the only person other than plaintiff and defendant present at the time, described the circumstances as follows:

"Q. After he [plaintiff] went through that field of beans with his tractor, did Cunningham come up to where you and your father were working? A. Yes, sir.

"Q. What did your father say to him and what did he say to your father? A. Well, he spoke to dad first and he said, 'It's awful muddy over there, ain't it?' And Dad said, 'Yes, it is. You didn't have to go out on the tractor to find that out.'

"Q. Then what was said? A. Well, he said something to Dad about he ought to have them out or something and Dad said that he had just been aggravating him and wouldn't let him get them out and Pat called him a lying son of a bitch and Dad slapped him.

"Q. Is that about all that happened? A. That's about the size of it.

"Q. Did your Dad order him off the place? A. Dad told him to get off the place.—"

Plaintiff's version of the incident was:

"Q. Now, when you went over there what did you do? A. Well, I drove around the edges of the field then I started to cut across a dry place and I mired down with the tractor.

"Q. Did you drive across the bean field? A. Yes, sir.

"Q. And it was muddy? A. It was probably muddy, yes.

"Q. Did you have quite a time getting out of there? A. Well, I had to back up two or three times, yes. * * *

"Q. Did you drive up to where Mr. Reagan was? A. Yes, sir. I drove right up to his combine.

"Q. What did you say to him when you went up there? * * * What did you say to him? A. Well, I drove up there and told him it was pretty tough in there and he said—

"Q. What did he say to you? A. He said, 'I am trying to pitch beans in the combine' and come around behind the tractor and he crawled up the back of it and grabbed me around the neck and busted me up the side of the head.

"Q. You didn't say anything to him? A. After he hit me I did, you bet I did.

"Q. Did you say anything to him before he hit you? A. No. I just went over there to help him out.

"Q. Did he ask you why you drove across that bean field? * * * A. Well, he might have asked me that * * *."

At the close of all the evidence, plaintiff moved the trial court to direct a verdict for him on the issue of liability for the reason that all the evidence showed that defendant had no legal justification for striking plaintiff, and plaintiff offered an instruction, consonant with that theory, which was refused by the trial court.

The case was submitted to the jury on defendant's theory that the jury reasonably could find that defendant was in possession of the land in question; that plaintiff became a trespasser upon the premises; and that if defendant used only necessary reasonable force to cause plaintiff's removal from such premises, the assault and battery were justified.

 Under all the evidence, including the written contract between the parties, it is questionable whether the jury reasonably could find that plaintiff was or became a trespasser upon the premises. The view we take, however, makes it unnecessary to determine that question. For our purposes, we shall assume that plaintiff, the landlord, was a trespasser upon the land rented to defendant. And we, of course, agree that the tenant had the right, if plaintiff was a trespasser, to order plaintiff off the prem-

ises and, in the event of his failure to leave after a reasonable opportunity to do so, defendant had the legal right to use whatever force (within limits not here important) was reasonably necessary to cause plaintiff to leave the premises. But even so, it is apparent that defendant's own affirmative testimony, by which he was bound, conclusively demonstrated that he had no legal justification for assaulting and striking plaintiff. This, because that testimony clearly meant that he struck plaintiff because, and only because, of the abusive epithet plaintiff addressed to him, and that he did not strike plaintiff in an attempt to cause plaintiff to leave the premises. While the jury did not need to believe plaintiff's version of the altercation, the fact remains that defendant, by his own testimony, established that he committed an unjustified assault and battery upon plaintiff.

It is well established that words, not themselves amounting to an assault, however abusive, do not constitute justification for, or amount to a defense of, an assault and battery. Reger v. Nowotny, Mo.Sup., 226 S.W.2d 596, 597[1–3]; Lehman v. Lambert, 329 Mo. 1147, 1152, 49 S.W.2d 65, 67[1–3]; Hodges v. Schuermann Building & Realty Co., Mo.App., 174 S.W.2d 909, 913[1, 2].

Under the circumstances, the only question for the jury was the amount of damages sustained by plaintiff, and the jury should have been so instructed. See Hogsett v. Smith, Mo.App., 229 S.W.2d 20, 22 [6–8].

For the reasons stated, the judgment is reversed and the case remanded for a new trial on the issue of damages.

VAN OSDOL and LOZIER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.