Quincy Cooper DAVIS, Plaintiff-Respondent,

v.

TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a corporation, Defendant-Appellant.

No. 45367.

Supreme Court of Missouri.

Division No. 2.

Dec. 10, 1956.

Motion for Rehearing or for Transfer to Court en Banc Denied Jan. 14, 1957.

Warner Fuller, John P. Montrey, St. Louis, for (defendant) appellant.

Harry R. Bracy, Henry D. Espy, St. Louis, for (plaintiff) respondent.

STONE, Special Judge.

Defendant, Terminal Railroad Association of St. Louis, appeals from a judgment of $5,000 for actual damages and an additional $5,000 for punitive damages awarded to plaintiff, Quincy Cooper Davis, by reason of an alleged assault upon plaintiff between 9 p. m. and midnight on November 13, 1954, by George L. Schlueter, one of defendant's special agents. Plaintiff, then twenty-six years of age and an employee of Fitzsimmons Coal Company, was shot five times by Schlueter shortly after plaintiff emerged from the basement of a building situate on a tract in defendant's railroad yards in St. Louis and occupied by Fitzsimmons as lessee.

Upon trial of the case, plaintiff explained that, after finishing work about 2 p. m. on the day of the shooting (a Saturday), he had worked on his automobile until about 8:30 p. m. and then had gone into the basement of the Fitzsimmons building to take a shower and change clothes. Two male friends, who had been with plaintiff while he worked on his automobile, also had entered the basement and, with plaintiff, had been engaged (as they said) in nothing more pernicious than "talking" and drinking two quarts of beer purchased at a nearby tavern. Although sharply disputed, plaintiff's evidence was that the basement door had been off its hinges for three to six months and that, on other occasions, plaintiff had been in the basement after working hours. In any event, plaintiff and his companions were found in this basement locker and shower room during the evening of November 13, 1954, as Schlueter was patrolling and checking the premises leased by Fitzsimmons, a service regularly provided by defendant's special agents.

After directing that plaintiff and his friends get out of the basement, Schlueter waited outside and, as each man came through the door, asked his name and address, "patted him down for weapons," and told him to stand against the wall of the building. There was a sharp conflict in the testimony as to what occurred when plaintiff, the last man to leave, emerged from the basement. *Plaintiff's* evidence was to the effect that he came out of the basement with his hands in the air and was searched as he was "coming right outside the door"; that, after "ducking" an attempted blow by Schlueter with his flashlight, plaintiff had walked "away from him (Schlueter) about ten feet" when Schlueter called "halt"; and that, when plaintiff promptly turned around with his hands in the air, Schlueter shot him five times. *Defendant's* version was that, when plaintiff came out of the basement, he refused to give his name or divulge what he had been doing, stating that was none of Schlueter's business; that, when Schlueter undertook to "pat him down," plaintiff began to grapple and fight with Schlueter; that, after Schlueter had broken loose, plaintiff came at him and engaged in another scuffle or tussle, in the course of which plaintiff said "that he had a gun and would shoot my (Schlueter's) head off"; that, Schlueter having broken away a second time and having drawn his pistol, plaintiff repeated the threat to "shoot your head off," again advanced toward Schlueter, and reached for his (plaintiff's) rear pocket; and, that thereupon Schlueter fired twice and, when plaintiff's right hand "jerked forward," fired three more times. Schlueter testified that he shot because "I thought my life was in immediate danger."

Defendant's principal complaint upon appeal is that the trial court erred in giv-

ing plaintiff's verdict-directing instruction 1, because it "gave the jury a roving commission,* failed to submit the hotly disputed factual issues to the jury, (and) did not provide * * sufficient facts to guide the jury in determining plaintiff's right to recover." Pointing out the "sharp, irreconcilable conflict in the factual versions as to the manner in which the shooting occurred," defendant argues, in substance, that instruction 1 was reversibly erroneous because plaintiff's version of the facts (which, in the language of defendant's counsel, showed "an aggravated, malicious, cold-blooded assault") was not hypothesized in instruction 1 with particularity but a verdict for plaintiff was authorized upon a finding that Schlueter "did intentionally, wantonly and maliciously shoot plaintiff without reasonable cause or excuse."

▆▆ In considering defendant's attack upon instruction 1, we bear in mind the basic and well-established principles that self-defense, upon which defendant relies, is an affirmative defense to be pleaded and proved by the party who, having committed an otherwise wrongful act, thus seeks to justify or excuse it;[1] that the in-

tentional shooting of one human being by another is presumptively unlawful;[2] and that, when plaintiff makes a prima facie case for the jury by showing that defendant (or, as in the instant case, defendant's agent admittedly acting within the scope of his employment) intentionally shot plaintiff, the burden of showing legal justification for the shooting then is cast upon defendant,[3] although, of course, the burden of showing an assault by defendant and resulting injury to plaintiff rests upon and abides with plaintiff throughout the trial.[4]

▆▆ In the case at bar, defendant affirmatively pleaded self-defense in its answer and adduced evidence in support of that plea; and, when the case went to the jury, this affirmative matter of self-defense was submitted fully and adequately in *defendant's* instruction 3, given in the language and form requested. Although it would appear that, *even if* defendant's plea of self-defense had not been so submitted in defendant's instruction 3, the requirement in plaintiff's instruction 1 of a finding that plaintiff was shot "without reasonable cause or excuse" would have been sufficient,[5] determination of that question

1. Atchison v. Procise, Mo.App., 24 S.W.2d 187, 190(3); Brown v. Barr, 184 Mo.App. 451, 456, 171 S.W. 4, 6(3); Orscheln v. Scott, 90 Mo.App. 352, 366, 368; Sloan v. Speaker, 63 Mo.App. 321, 325(5). Consult also Burns v. Colley, 223 Mo.App. 76, 82, 9 S.W.2d 159, 162(2); Mehlstaub v. Michael, 221 Mo.App. 807, 814, 287 S.W. 1079, 1082; Brubaker v. Bidstrup, 163 Mo.App. 646, 654, 147 S.W. 541, 544.

2. Lehman v. Lambert, 329 Mo. 1147, 1153, 49 S.W.2d 65, 68; Parris v. Deering Southwestern Ry. Co., Mo.App., 227 S.W. 1071, 1072–1073; Johnson v. Daily, 136 Mo.App. 534, 538, 118 S.W. 530, 531(2). See also Berryman v. Southern Surety Co., 285 Mo. 379, 396, 227 S.W. 96, 101.

3. Reger v. Nowotny, Mo., 226 S.W.2d 596, 597(1); Lehman v. Lambert, supra, 49 S.W.2d loc. cit. 68; Morgan v. Mulhall, 214 Mo. 451, 459–460, 114 S.W. 4, 6(4); La Bella v. Southwestern Bell Telephone Co., 224 Mo.App. 708, 715–716, 24 S.W. 2d 1072, 1076–1077(6); Atchison v. Procise, supra, 24 S.W.2d loc. cit. 190(6-

7); Epperson v. Elliott, 215 Mo.App. 123, 124, 242 S.W. 1012; Hartman v. Hoernle, Mo.App., 201 S.W. 911, 912(1); Orscheln v. Scott, supra, 90 Mo.App. loc. cit. 368.

4. Reger v. Nowotny, supra, 226 S.W.2d loc. cit. 597(2); Orblitt v. Bergfeld, Mo., 191 S.W. 998, 1000(2); Duncan v. Moore, 219 Mo.App. 374, 382–383, 271 S. W. 847, 850.

5. Daggs v. St. Louis-San Francisco Ry. Co., Mo.App., 51 S.W.2d 164, 167–168(9); Colby v. Thompson, Mo.App., 207 S.W. 73, 74(7). See plaintiff's instruction 1 in Reger v. Nowotny, supra, 226 S.W.2d loc. cit. 597. Consult also Berryman v. Southern Surety Co., supra, 227 S.W. loc. cit. 101(5–6); Steiner v. Degan, Mo. App., 101 S.W.2d 519, 523(3); Morris v. St. Louis & S. F. R. Co., 184 Mo.App. 65, 72–73, 168 S.W. 325, 327(1). And, compare State v. Munson, 76 Mo. 109, 112–113; State v. Wicker, Mo., 222 S.W. 1014, 1016–1017(6); State v. Janke, 238 Mo. 378, 141 S.W. 1136.

is expressly reserved as unnecessary to proper disposition of the instant case. For, *assuming* that it was necessary for plaintiff's instruction 1 to negative defendant's theory of self-defense and that the quoted finding required by instruction 1 did not do so, we are reminded of the principle, which finds application here as it has in a wide variety of cases,[6] that such error (if any) as otherwise might result from the mere failure of plaintiff's verdict-directing instruction to require a finding as to a matter not a necessary element of plaintiff's case but relating to an affirmative defense is cured by proper submission of such defensive matter in another instruction. Since, in the instant case, justification of the intentional shooting of plaintiff on the ground of self-defense, an affirmative defense to be pleaded and proved by defendant, was submitted fully and adequately by defendant's instruction 3, and since the instructions, when read as a whole, correctly advised the jury as to the law of the case, we think it manifest that the giving of plaintiff's instruction 1 could not have constituted reversible error.[7]

■■ Defendant also attacks plaintiff's instruction 4 on the measure of damages, on the *sole* ground that it was in conflict with plaintiff's verdict-directing instruction 1 in that instruction 4 *"by implication* told the jury that plaintiff could recover compensatory damages without a finding of willful and malicious conduct on Schlueter's part" while instruction 1 predicated any recovery by plaintiff on a finding that Schlueter "wantonly and maliciously" shot plaintiff. Instruction 4 simply told the jury

that, "if your verdict be for plaintiff, you *will* assess his compensatory damages at such sum as will compensate him for his injuries," taking into consideration stated elements, and that, if the shooting was found to be willful and malicious, exemplary damages *might* be allowed. If there was any conflict between instructions 1 and 4, it was *"by implication" only* and fell within the category of nonprejudicial abstract, theoretical or philosophical conflicts, which do not constitute reversible error. Mahan v. Baile, 358 Mo. 625, 633, 216 S. W.2d 92, 95–96(7); Williams v. Thompson, Mo., 251 S.W.2d 89, 92. Furthermore, by requiring the jury to find that Schlueter's action was wanton and malicious as a prerequisite to assessment of *compensatory* damages, plaintiff simply assumed an unnecessary burden which certainly did not prejudice defendant and here affords no just cause for complaint. Wehmeyer v. Mulvihill, 150 Mo.App. 197, 210, 130 S.W. 681, 685(12). Compare Nichols v. Nichols, 147 Mo. 387, 402, 48 S.W. 947, 951(3).

■ Finally, defendant urges that the trial court erred in overruling two objections during plaintiff's argument to the jury. The first such objection was interposed to the argument that Schlueter had no authority to search plaintiff "without putting him under arrest," which concededly Schlueter had not done. On cross-examination of Schlueter, he was asked *without objection* "Don't you know that you have to place a man under lawful arrest before you have a right to search him?" and answered "Yes, for a search"; and, although defendant's objection to ar-

---

6. Griffith v. Delico Meats Products Co., 347 Mo. 28, 35(2), 145 S.W.2d 431, 434–435 (2, 4); Evans v. Atchison, T. & S. F. Ry. Co., 345 Mo. 147, 159(4), 131 S.W. 2d 604, 611(15); Mitchell v. Wabash Ry. Co., 334 Mo. 926, 936(4), 69 S.W.2d 286, 290(4); State ex rel. North British & Mercantile Ins. Co. v. Cox, 307 Mo. 194, 197, 270 S.W. 113, 114; De Winter v. Lashley, Mo.App., 274 S.W.2d 40, 43(3). See also Lansford v. Southwest Lime Co., Mo., 266 S.W.2d 564, 569(8); Perry v.

Missouri-Kansas-Texas R. Co., 340 Mo 1052, 1068, 104 S.W.2d 332, 340(7).

7. Reger v. Nowotny, supra, 226 S.W.2d loc. cit. 598; Scott v. St. Louis-San Francisco Ry. Co., Mo.App., 52 S.W.2d 459, 462; Greaves v. Kansas City Junior Orpheum Co., 229 Mo.App. 663, 676, 80 S. W.2d 228, 236 (16); Duerkob v. Brown, Mo.App., 255 S.W. 962, 965(4). See also Nelson v. Tayon, Mo., 265 S.W.2d 409, 414(2); Duffy v. Rohan, Mo., 259 S.W.2d 839, 841(1, 3).

gument along this line was *overruled* when *first* interposed, a similar objection was *sustained* when plaintiff's counsel undertook to return to the same argument. The other objection, here urged as a ground for reversal, was interposed to the argument of plaintiff's counsel that "I know they could not give me $50,000 to have five of those bullets pumped into my stomach." Although this objection was overruled, counsel did not further pursue or thereafter return to this line of argument. And, the fact that the jury returned a verdict, not here attacked as excessive and undoubtedly quite modest for the severe injuries suffered by plaintiff, indicates that (contrary to defendant's contention on appeal) the quoted argument was not, in effect, inflammatory and did not, in fact, "arouse the passion of the jury."

■ Recognizing that, in the heat of partisan advocacy, zealous counsel may overstep the bounds of propriety, our appellate courts frequently have emphasized that the trial judge is invested with wide discretion as to what action should be taken with respect to improper argument, and that where, as here, an able trial judge has not regarded the transgression of counsel as of sufficient moment to justify a new trial, the appellate court will not interfere unless there has been a manifest abuse of discretion. Collins v. Cowger, Mo., 283 S.W.2d 554, 561(8, 9), and cases there cited; Pritt v. Terminal R. R. Ass'n of St. Louis, Mo., 251 S.W.2d 622, 625–626; Crews v. Kansas City Public Service Co., 341 Mo. 1090, 1105, 111 S.W.2d 54, 62; Hancock v. Crouch, Mo.App., 267 S.W.2d 36, 46 (18). After careful consideration of the quoted statements of plaintiff's counsel in context, in relation to the vigorous and wide-ranging argument of defendant's capable counsel, and in the light of the evidence adduced, we are not persuaded that plaintiff's argument affected either the result on the merits or the amount of the verdict.

The judgment is affirmed.

EAGER, P. J., and STORCKMAN, J., concur.

LEEDY, J., not sitting.